# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

| | |
|---|---|
| **JANICE ANN BUTLER-MITCHELL** | **PLAINTIFF** |
| V. | **CASE NO. 1:05CV202** |
| **MAGNOLIA REGIONAL HEALTH SERVICES, INC., a/k/a MAGNOLIA REGIONAL HEALTH CENTER** | **DEFENDANT** |

## MEMORANDUM OPINION

This cause comes before the court on the defendant's motion [51-1] for summary judgment as well as the defendant's motion [62] to strike portions of the plaintiff's brief in opposition to the motion for summary judgment. The court has reviewed the briefs and submissions and is prepared to rule.

Plaintiff Janice Ann Butler-Mitchell was employed as an at-will employee by Magnolia Regional Health Center ("Magnolia") for approximately six years as a triage technician/greeter until her termination on March 31, 2005. Magnolia is a community hospital and a government entity. Prior to her termination, Mrs. Butler-Mitchell had a conflict with Dr. Mathis about the level of care her husband received while in his charge. Mrs. Butler-Mitchell's husband died in June 2001, and she was of the opinion that her husband's death was caused by Dr. Mathis' lack of appropriate medical care.

The plaintiff's complaint states that during the course of her employment at Magnolia, the plaintiff and other employees "talked among themselves about what they regarded as poor medical care being given by Dr. Mathis." Mrs. Butler-Mitchell was aware that hospital policy

made it a breach of confidentiality to relay to patients that a doctor was affording poor medical care.

On March 30, 2005, Elvie Mayhall entered the Magnolia emergency room with complaints of drainage from an incision from hernia surgery performed by Dr. Mathis. After waiting in the emergency room, Mr. Mayhall left and walked to Dr. Mathis' office. Upon arriving at Dr. Mathis' office, Mr. Mayhall told Dr. Mathis' nurse, Gayle Gurley, and a hospital administrator who happened to be in the office, Renee Bullard, that he heard two hospital employees making derogatory comments about Dr. Mathis and that he was made to wait an extremely long time in the emergency room waiting room without receiving treatment. Particularly, he stated that one of the employees said that she would not let her dog be treated by Dr. Mathis, much less any member of her family. Renee Bullard reported Mr. Mayhall's complaints to Betsy Wood, the assistant director of nursing. Ms. Wood subsequently interviewed Mr. Mayhall, during which he reconfirmed that he heard two employees engaged in a derogatory conversation about Dr. Mathis. Diane Clement, a supervisor, checked the work schedule and determined that Joyce Alred had been at the registration desk in the emergency room all day. Mrs. Alred had already left for the day, so Ms. Clement asked the registration supervisor to call Mrs. Alred back in so that she could speak with her about the patient's complaints. Mrs. Alred admitted that she made a comment to Janice Butler-Mitchell about not taking any member of her family to Dr. Mathis and signed a statement to that effect.

The next day Mrs. Butler-Mitchell and her co-worker Joyce Alred were called in for a meeting with Betsy Wood and Diane Clement. Plaintiff Butler-Mitchell denies responding to Mrs. Alred's comment or ever making a comment about Dr. Mathis in the presence of the patient. Mrs. Alred only asserts that the plaintiff said "oh no" in response to her comment that

another one of Dr. Mathis' patients had presented to the emergency room. During this meeting both Mrs. Butler-Mitchell and Mrs. Alred were terminated.

In this instance, Magnolia alleges that it did not terminate the plaintiff in violation of her First Amendment rights and that she has not established a prima facie case of First Amendment retaliation. The plaintiff's rebuttal memorandum characterizes this dispute as not being about her speech, but her lack of speech. The plaintiff maintains that she never made a comment about Dr. Mathis in the presence of a patient, but that she heard a fellow employee make a critical statement and failed to report the incident. She also maintains that Magnolia's policy is overly broad and unconstitutional because the policy does not define what speech is prohibited and that Magnolia interprets the policy to prohibit "many types of speech that the First Amendment protects." The plaintiff concedes her substantive due process claim, her procedural due process claim, and her punitive damages claim.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105

(2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 120 S.Ct. at 2110.

To prevail on a First Amendment employment retaliation claim, an employee must establish four elements: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse employment action. *Salge v. Edna Indep. School Dist.*, 411 F.3d 178, 184 (5th Cir. 2005). The defendants have conceded elements one and four; therefore, the only elements left for analysis are elements two and three.

Whether an employee's speech addresses a matter of public concern must be determined by the *content, form,* and *context* of a given statement, as revealed by the whole record. *Salge*, 411 F.3d at 186. When a public employee speaks in his capacity as an employee and addresses personal matters such as personnel and employment disputes, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment. *Id.* When the speech in question merely touches on an element of personal concern in the broader context of a matter of public concern, however, a court is not precluded from concluding that an employee's speech as a whole addresses a matter of public concern. *Id*.

*Waters v. Churchill*, 511 U.S. 661,675 114 S.Ct. 1878, 1888, 128 L.Ed.2d 686 (1994) also instructs:

> The key to First Amendment analysis of government employment decisions, then, is this: The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer. The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is

4

employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.

This court must look to the facts as the employer reasonably found them to be. *Waters*, 511 U.S. at 677, 114 S.Ct. at 1889. *See also Salge*, 411 F.3d at 185. There will often be situations in which reasonable employers would disagree about who is to be believed, how much investigation needs to be done, or how much evidence is needed to come to a particular conclusion. *Id*. at 678. Only procedures outside the range of what a reasonable manager would use may be condemned as unreasonable. *Id*.

The plaintiff's characterization that her termination was a result of her failure to speak is inaccurate. The defendant has maintained that the plaintiff was a participant in a two-way conversation in which inappropriate comments were made in the presence of a patient. Although the plaintiff denies making any response to Alred's comments, the examination must be undertaken considering the facts as the employer found them to be. In considering the facts as the employer found them to be, Magnolia had received a complaint from a patient that two employees were engaged in a conversation in which derogatory comments were made about a doctor, and Alred subsequently admitted saying that she would not take her dog to Dr. Mathis. Further, the plaintiff admits that it was known that she blamed Dr. Mathis for the death of her husband. The Supreme Court has acknowledged that employers often rely on their personal knowledge of credibility and on other factors that the judicial process ignores. *Waters*, 511 U.S. at 676. Government employers should be allowed to use personnel procedures that differ from the evidentiary rules used by the courts without fear that these differences will lead to liability. *Id*.

The context factor does not weigh in Mrs. Butler-Mitchell's favor because neither Plaintiff Butler-Mitchell nor Joyce Alred demonstrated any intention to inform the public about what they considered to be inadequate health care. The conversation was not held against the backdrop of public debate concerning the quality of healthcare or any similarly related issue. While the patient ostensibly could hear them, Mrs. Alred and Mrs. Butler-Mitchell spoke only to each other and not directly to Mr. Mayhall; therefore, they could not have intended for the conversation to be a matter of public interest. Also, the plaintiff's deposition testimony makes it clear that she never intended to file a formal complaint against the doctor.

The fact that an employee responds to an invitation to speak rather than initiating the speech weighs in favor of finding that an employee's speech is on a matter of public concern. *Salge*, 411 F.3d at 189. The form factor also weighs against the plaintiff because there was no inquiry by the patient as to the skill of Dr. Mathis or by any other person evincing any sort of concern about the quality of the health care at the hospital. Neither was the plaintiff presenting her concerns to hospital management to enable them to take appropriate steps to remedy the situation.

Finally, the content of the speech weighs against a finding that the speech was on a matter of public concern. Speech is not on a matter of public concern if it is made solely in furtherance of a personal employer-employee dispute. *Id.* at 187. Deposition testimony submitted by the plaintiff indicates that the only reason the statements were made is because Mrs. Alred knew of Mrs. Butler-Mitchell's feelings about Dr. Mathis. As all three factors weigh against finding that the speech was a matter of public concern, the plaintiff has failed to establish a prima facie case

6

of First Amendment retaliation and there is no need to engage in the *Pickering* balancing analysis.

The plaintiff also alleges that the policy is facially overbroad because it prohibits speech protected by the First Amendment. The overbreadth doctrine applies primarily in the First Amendment context to allow facial challenges to laws that may chill free speech rights. *Roark & Hardee L.P. v. City of Austin*, 394 F.Supp.2d 911, 919 (W.D. Tex. 2005). "There are two quite different ways that an ordinance may be considered invalid "on its face" --- either because it is unconstitutional in every application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772. The plaintiff asserts that the policies in the handbook cover protected and unprotected speech. However, she does not specifically allege that any particular section of the Magnolia employee handbook is overbroad, but that the entire handbook is overbroad and contends that Magnolia prohibits speech on an ad hoc basis.

The plaintiff directs our attention to their submission of Exhibit H, the Magnolia Regional Health Center handbook. The apparent sections of the handbook relating to the issue at hand are the "Confidentiality" and "Disciplinary Procedures and Conduct Standards." The "Confidentiality" section states:

> Employees are to consider all information regarding patient care and welfare as privileged communications between the patient and their attending physician or other personnel contributing to the care of the patient. The business of MRHC is confidential and is not to be discussed with persons outside the facility. Any information given to persons inside the facility must be on a need-to-know basis. Employee, physician, and patient telephone numbers and addresses are

7

confidential and should only be released with authorization or on a need-to-know basis. Employees should keep confidential, during and after their term of employment, all such information to which they have access, including salary and business financial information. A breach of confidentiality is potential grounds for termination and could involve you in legal proceedings.

The "Disciplinary Procedures and Conduct Standards" states:

MRHC expects employees to show a high degree of responsibility. The hospital strives to maintain an effective disciplinary policy that provides for consistency in the application of its rules and regulations and consistency in the application of effective discipline to its offenders. Employees engaged in activities that disrupt and/or prevent services to the patients or public might subject themselves to disciplinary action or discharge. Violations of our standards will result in appropriate action in accordance with policies and procedures developed for MRHC. These could include documented warnings, probation, suspension or even termination. Each situation is evaluated individually, and the hospital will apply the steps appropriate to a given infraction. The hospital retains discretion to determine the appropriate discipline up to and including termination.

It is impossible to list every example of conduct that can be considered cause for discharge from employment. In general, grounds for discharge include any action that compromises out ability to deliver high-quality patient care, violates hospital or patient confidentiality or jeopardizes the hospital's reputation. This includes, but is not limited to:

The handbook then begins to list a representative, but not all inclusive, list of items that would subject an employee to termination, such as insubordination, incompetence, falsification of records, and discourteous treatment of patients, physicians, fellow employees, or the public in any manner including abusive or profane language.

Without guidance as to particular offending terms in the handbook, the court examines each section individually. The "Confidentiality" section seems to evenhandedly attempt to protect the confidentiality of patients. All items regarding patient care and welfare are to be handled in a discreet and confidential manner. It does not forbid employees from forming or expressing opinions as private citizens, but prevents staff from engaging in conduct that could

8

jeopardize a patient's privacy. Further, the "Disciplinary Procedures and Conduct Standards" notes typical employer disciplinary procedures and regulates a substantial spectrum of conduct that is not arguably protected speech. As such, the plaintiff's facially overbreadth claim must fail. The defendant's motion [51-1] for summary judgment is GRANTED.

With regards to the defendant's motion to strike [62], the motion is GRANTED IN PART and DENIED IN PART. The plaintiff requests that the deposition testimony on pages 2, 3, 4, and 6-9 of the plaintiff's rebuttal memorandum to the defendant's motion for summary judgment be stricken. Page three (3) of the plaintiff's rebuttal memorandum is STRICKEN as this is not a libel or slander suit and the truth or falsity of the statements at issue play no role in determining whether the speech concerned a matter of public interest in the context of *Pickering*. *Salge*, 411 F.3d at 185.

This the 10th day of January, 2007.

                                          **/s/ Michael P. Mills**
                                          **UNITED STATES DISTRICT JUDGE**